EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Anthony Salvá Rivera<br><br>Peticionario<br><br>v.<br><br>Administración de Corrección,<br>Alcaide Las Cucharas 676<br><br>Recurrido | Certiorari<br><br>2021 TSPR 44<br><br>206 DPR ____ |

Número del Caso:  CC-2021-201


Fecha: 30 de marzo de 2021


Tribunal de Apelaciones:

    Panel IV

Abogado de la parte peticionaria:

    Lcdo. Luis A. González Soto
    Sociedad para Asistencia Legal


Materia:  Resolución con Voto Particular de Conformidad y Voto Particular Disidente.



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Anthony Salvá Rivera

       Peticionario

          v.

                         CC-2021-201

Administración de Corrección, Alcaide Las Cucharas 676

       Recurrido

RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de marzo de 2021.

Evaluada la *Moción urgente en auxilio de jurisdicción* y la *Petición de* certiorari, presentadas por el Sr. Anthony Salvá Rivera, se provee no ha lugar a ambas.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió un Voto Particular de Conformidad al cual se unieron la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señor Kolthoff Caraballo, señor Rivera García y señor Feliberti Cintrón. La Jueza Presidenta Oronoz Rodríguez disiente y hubiese expedido la *Petición de certiorari* y declarado con lugar la *Moción urgente en auxilio de jurisdicción*. El Juez Asociado señor Estrella Martínez emitió un Voto Particular Disidente.

El Juez Asociado señor Colón Pérez "disiente del curso de acción seguido por una mayoría de este Tribunal en el presente caso y, en consecuencia, hubiese provisto ha lugar a la moción en auxilio de jurisdicción así como a la petición de certiorari

presentadas en la causa de epígrafe. Lo anterior, pues, los hechos tan particulares que originaron la controversia ante nuestra consideración revelan un accidentado manejo del caso de marras, lo cual ha ocasionado que el señor Anthony Salvá Rivera esté detenido preventivamente en una institución carcelaria por un término que excede el dispuesto en el Art II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1".

Notifíquese inmediatamente.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Anthony Salvá Rivera

      Peticionario

         v.

Administración de Corrección, Alcaide Las Cucharas 676

      Recurrido

CC-2021-201

Voto particular de conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES al cual se unieron la Jueza Asociada señora PABÓN CHARNECO y los Jueces Asociados señor KOLTHOFF CARABALLO, señor RIVERA GARCÍA y señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 30 de marzo de 2021.

Estoy conforme con la Resolución que hoy se certifica debido a que la decisión del Tribunal de Apelaciones aplicó correctamente nuestros precedentes.

I

El 21 de junio de 2019, se interpuso denuncias contra el Sr. Anthony Salvá Rivera por infracciones a los Arts. 130 (Agresión sexual), 177 (Amenazas), 195 (Escalamiento Agravado) y 198 (Daños) del Código Penal, 33 LPRA secs. 5191, 5243, 5265, 5268. Se alegó que este entró a una residencia forzando una ventana para cometer el delito de agresión sexual contra una menor de edad. Al día siguiente, se determinó causa

para arresto por los delitos imputados y el señor Salvá Rivera ingresó a una institución carcelaria en vista de que no pudo prestar los $200,000 de fianza impuesta. Tras varios trámites procesales, el juicio contra el peticionario comenzó el 28 de enero de 2020 con la desinsaculación del jurado (dentro del término constitucional), el cual quedo finalmente constituido el 5 de febrero de 2020. Luego de iniciado el desfile de prueba durante varios días de juicio, la continuación del juicio quedó señalada para el 19 de marzo de 2020. Sin embargo, el 15 de marzo de 2020 la Rama Judicial anunció la suspensión de los procedimientos judiciales a causa de la crisis de salud pública que aún hoy continuamos enfrentando.

Así las cosas, el señor Salvá Rivera presentó una *Petición de habeas corpus* al Tribunal de Primera Instancia, en la cual alegó que había estado detenido por más de catorce meses sin que se demostrara su culpabilidad más allá de duda razonable. Razonó que lo que llamó una "detención preventiva" violentó su derecho a un juicio rápido. Oportunamente el Ministerio Público presentó su oposición. Sostuvo que el mecanismo de hábeas corpus no es aplicable a casos donde el juicio ya comenzó y que nuestro ordenamiento jurídico no establece un término mínimo para concluir un juicio, sino para iniciarlo. Además, resaltó que se celebraron varias vistas para auscultar la situación de los miembros del jurado y que, durante el

periodo en detención, el señor Salvá Rivera se encontraba cumpliendo una pena por otros delitos previamente juzgados. Aun así, el 1 de septiembre de 2020, el foro primario declaró ha lugar la petición y ordenó la excarcelación del señor Salvá Rivera.

Oportunamente, el Pueblo apeló y reiteró lo anteriormente planteado. El 1 de marzo de 2021, el Tribunal de Apelaciones revocó la determinación del Tribunal de Primera Instancia y ordenó el reingreso del señor Salvá Rivera a una institución carcelaria. Sustentó su determinación en que la jurisprudencia es clara al establecer que una vez iniciado el juicio no procede el auto de hábeas corpus bajo el fundamento de violación de los términos de detención preventiva. Además, razonó que el auto de hábeas corpus no podía utilizarse en sustitución de los remedios ordinarios provistos en la ley, como lo es el *mandamus* o una moción de desestimación por violación de los términos de juicio rápido en el mismo caso, en lugar de iniciar un proceso separado como este.

Finalmente, el 24 de marzo de 2021 el señor Salvá Rivera presentó ante este foro una *Petición de certiorari*. Nos solicitó que revisemos la sentencia del Tribunal de Apelaciones. Asimismo, presentó una *Moción urgente en auxilio de jurisdicción* para que atendiéramos con premura su caso y ordenáramos su excarcelación inmediata.

II

El peticionario alega que su excarcelación procede porque transcurrió el término de seis meses prescrito en nuestra Constitución desde que el juicio quedó interrumpido sin saberse cuándo se reanudaría. En primer lugar, es menester indicar que el juicio fue calendarizado para continuar el 8 de abril de 2021, de modo que no cabe hablar de que el peticionario desconoce cuándo será enjuiciado. En este caso no hay una postergación indefinida del juicio. En Pueblo v. Díaz Alicea, 2020 TSPR 56, 204 DPR __ (2020), aclaramos que el derecho a no ser detenido preventivamente por más de seis meses **concierne específicamente al periodo antes del juicio**. La cláusula de detención preventiva, Art. II, Sec. 11 de la Constitución de Puerto Rico, 1 LPRA, protege a la persona de que no se le detenga por más de seis meses **sin que haya comenzado el juicio en su contra**.

Del Diario de Sesiones de la Convención Constituyente surge que con el límite constitucional al plazo de detención preventiva "lo que se ha querido subsanar es esta situación particular donde no ha mediado Juicio alguno. Esto lo que quiere decir es que en los casos donde no ha mediado Juicio, una persona no puede estar detenida en la cárcel por más de seis meses". 3 Diario de Sesiones de la Convención Constituyente 1597 (ed. 1961).

El peticionario así lo reconoce, pero alega que esto solo debe aplicarse a "situaciones normales", cuando el juicio continúa ininterrumpidamente y no a su caso. No le

asiste la razón. Si bien la suspensión de labores judiciales fue un evento excepcional, una vez comienza el juicio la detención preventiva culmina. Eso hace improcedente el recurso extraordinario de hábeas corpus. Pueblo v. Díaz Alicea, supra. Véase, Arnaldo Ortiz v. Alcaide, 203 DPR 1033 (2020) (Voto particular del Juez Asociado señor Rivera García). El juicio en este caso comenzó el 28 de enero de 2020. Eso basta para resolver que se cumplió con la cláusula de detención preventiva.

Por otra parte, el peticionario arguyó que la paralización de los procesos afecta su derecho a un juicio rápido y que existe riesgo de la contaminación de los miembros del jurado. Como conocemos, el derecho a un juicio rápido consagrado tanto en el Art. II, Sec. 11 de la Constitución de Puerto Rico como en la primera cláusula de la Sexta Enmienda de la Constitución federal, se activa tan pronto el acusado es detenido o queda sujeto a responder. Pueblo v. Catalá Morales, 197 DPR 214, 223 (2017). Aunque no hay regulación estatutaria que establezca un término determinado para la duración de un juicio, el derecho a juicio rápido aplica a todo su desenvolvimiento. Pueblo v. Rivera Tirado, 117 DPR 419, 431 (1986). No obstante, este derecho no es una protección absoluta para el acusado ni opera en un vacío. Pueblo v. Custodio Colón, 192 DPR 567, 581 (2015).

Ante un reclamo de violación del derecho a juicio rápido debemos considerar las circunstancias específicas

que rodean el reclamo, puesto que este precepto constitucional puede ser compatible con alguna tardanza o demora. Pueblo v. Rivera Santiago, 176 DPR 559, 570 (2009). Por eso, al evaluar una dilación durante el juicio, hemos hecho un balance de los intereses siguientes: (1) la duración de la tardanza; (2) las razones para la dilación; (3) si el acusado ha invocado oportunamente su derecho, y (4) el perjuicio resultante para el acusado. Íd. A su vez, el perjuicio alegado por el acusado no puede ser abstracto, sino que debe ser real y sustancial. Íd.

Como hemos reconocido, la situación de salud pública vigente presenta retos operacionales a esta Rama de Gobierno. Véase, Pueblo v. Santiago Cruz, 2020 TSPR 99, 205 DPR __ (2020). Si bien el juicio del señor Salvá Rivera ha estado paralizado por algún tiempo, se han celebrado varias vistas sobre el estatus del caso y **hay una fecha cierta y cercana para su reanudación**. No hay evidencia de que el jurado no pueda continuar. Si eso pasara, el peticionario podría tener derecho a un remedio por violación del debido proceso de ley, pero sin indicios de eso tendríamos que especular para darle la razón en esta etapa. En otras palabras, el peticionario no nos ha puesto en condiciones para concluir que sufre un perjuicio real y sustancial por la demora en reanudar su juicio. Tomando en consideración que no hay término alguno para la conclusión del juicio, así como las razones de la dilación

y la falta de evidencia del perjuicio alegado, debemos concluir que el Tribunal de Apelaciones no erró al revocar la sentencia del Tribunal de Primera Instancia. No procedía la excarcelación del señor Salvá Rivera.

### III

En fin, estoy convencido de que la prudencia y la sana administración de la justicia aconsejan denegar tanto la expedición de la moción en auxilio de jurisdicción como la petición de *certiorari*.


                              RAFAEL L. MARTÍNEZ TORRES
                                    Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Anthony Salvá Rivera<br><br>Peticionario<br><br>v.<br><br>Administración de Corrección, Alcaide Las Cucharas 676<br><br>Recurrido | CC-2021-0201 | Certiorari |

Voto particular disidente emitido por el Juez Asociado señor ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 30 de marzo de 2021.

> "El uso no excepcional de la prisión preventiva es uno de los problemas más graves y extendidos que enfrentan los Estados miembros de la OEA en cuanto al respeto y garantía de los derechos de las personas privadas de libertad, que constituye uno de los signos más evidentes del fracaso del sistema de administración de justicia, y resulta una situación inadmisible en una sociedad democrática que respeta el derecho de toda persona a la presunción de inocencia".
>
> - Guía Práctica para Reducir la Prisión Preventiva, Comisión Interamericana de Derechos Humanos – OEA

Hoy, debimos pautar y reconocer que la protección contra la detención preventiva excesiva y sus corolarios se activan, no sólo ante la dilación en el inicio de un juicio, sino también ante interrupciones prolongadas que tienen el mismo efecto de provocar que un ser humano, que se presume no culpable, esté siendo privado de su libertad

ilegalmente por más de seis (6) meses. Lamentablemente, no fue así. Por el contrario, la determinación de este Tribunal diluye nuevamente la garantía constitucional autóctona contra la detención preventiva excesiva.

Como férreo defensor de tal protección constitucional y consciente de las implicaciones que tiene para un ser humano perder su libertad a manos del Estado sin contar con la certeza de cuándo el proceso llegará a su fin, expediría el recurso de autos y revocaría el dictamen del Tribunal de Apelaciones. Ello, con el fin de que el peticionario enfrentara la continuación de su juicio en la libre comunidad, con las correspondientes restricciones y condiciones, tal cual lo haría una persona que contó con los recursos económicos para pagar su fianza. Me explico.

El Sr. Anthony Salvá Rivera (señor Salvá Rivera) fue ingresado a prisión el **22 de junio de 2019**, al no poder prestar la fianza impuesta de $200,000. Por solicitud de la defensa, éste fue evaluado por el psiquiatra del Estado y declarado no procesable el 5 de agosto de 2019. No obstante, el 7 de octubre de 2019 fue declarado procesable.[1]

Ante el hecho de que el señor Salvá Rivera hizo efectivo su derecho a juicio por jurado, el **28 de enero de 2020**, se tomó el juramento preliminar a los candidatos a

---

[1]El 26 de noviembre de 2019, el señor Salvá Rivera fue sentenciado por dos (2) delitos menos graves. Tal sentencia la cumplió el 19 de junio de 2020. Véase, apéndice de certiorari, pág. 68.

jurados y comenzó el proceso de la desinsaculación. A mediados del mes de febrero comenzó el desfile de la prueba, lo cual se extendió hasta mediados del mes de marzo. Sin embargo, a consecuencia de las órdenes ejecutivas y las medidas cautelares de la Rama Judicial ante la pandemia del COVID-19, la continuación del juicio fue paralizada.

Al cabo de varios meses, la defensa del señor Salvá Rivera solicitó la continuación del juicio. A pesar de que el tribunal ordenó la continuación de éste y que intentó materializar su celebración, no se pudo. El propio tribunal reconoció los esfuerzos para trasladar la celebración del juicio a otras facilidades más amplias y favorables en cuanto a la ventilación natural, pero ello no fue posible ante la negativa de la Oficina de Administración de los Tribunales.

De este modo, el señor Salvá Rivera se encontró en un limbo jurídico, pues su juicio quedó paralizado indefinidamente sin solución aparente, y, lo más agravante, privado de su libertad. Ante este escenario, la defensa solicitó un habeas corpus e invocó los siguientes derechos constitucionales: a la vida, a la libertad, a la dignidad del ser humano, a la presunción de inocencia, a la igual protección de las leyes, a juicio por jurado y a juicio rápido. A su vez, hizo alusión a la protección en contra de la detención preventiva excesiva, pues su juicio llevaba paralizado indefinidamente más de seis (6) meses y

el señor Salvá Rivera **llevaba un (1) año con setenta y nueve (79) días privado de su libertad**, sin determinársele la comisión de un delito.

De una certificación del Departamento de Corrección y Rehabilitación se desprende que, a la fecha del 21 de agosto de 2020, el peticionario llevaba **encarcelado un total de 426 días** por los delitos que estaban pendientes por ser juzgados.[2]

De manera sensata y con los principios de equidad y justicia por delante, el Tribunal de Primera Instancia ordenó la excarcelación del señor Salvá Rivera. El foro primario destacó que habían transcurrido ciento setenta y un (171) días desde la última vista celebrada en el juicio. Ello, sumado al tiempo cumplido antes del juicio, tenía un total de doscientos noventa y cuatro (294) días de encarcelación sin la celebración del juicio.[3] A su vez, resaltó que, a la fecha en que se redactaba tal sentencia, "los encargados de la administración judicial no [habían] logrado poner en ejecución un mecanismo para iniciar o reanudar los juicios por jurado en estos tiempos de pandemia".[4] Basado en esta situación particular, el tribunal entendió que la justicia debía prevalecer sobre

---

[2]Íd., pág. 68.

[3]El Tribunal de Primera Instancia descontó los días que el peticionario no se encontraba procesable.

[4]Apéndice de certiorari, pág. 75.

posibles ficciones jurídicas. Por parecerme muy acertado el análisis de tal foro lo cito ad verbatim:

> [R]esolvemos que lo jurídicamente correcto y justo en este caso es tratar los días anteriores al comienzo del juicio y los posteriores a su suspensión como componentes del mismo término de detención preventiva consagrado en la Constitución. Después de todo, más allá de cualquier planteamiento enjundioso y bien articulado los días que el acusado ha pasado en cárcel desde la suspensión del juicio no pueden ser otra cosa que una detención preventiva. No podemos considerarlos de otra forma porque no lo hay. Justificar más días de cárcel porque no son días anteriores al juicio implicaría rendirnos a la ilegalidad que representa un encarcelamiento de duración indefinida, con todas las sensaciones de estarse cumpliendo una pena, para la que no ha mediado veredicto ni fallo de culpabilidad; y se ha prescindido de un dictamen de sentencia. Además, si bien ni siquiera por ficción jurídica podemos tratar dichos días como si no hubieran transcurrido, tampoco podemos permitir que semejante periodo llegue a durar tanto o más que el término de detención preventiva prescrito en nuestra Constitución. Del mismo modo, tampoco podemos descartar la existencia de los días de encarcelamiento anteriores al juicio por el mero hecho de que este en algún momento comenzó. Por lo tanto, al necesario tiempo que se necesite para atender con salubridad este asunto contraponemos la espera de ello por el acusado, pero en libertad por haber excedido su detención preventiva los seis meses prescritos en nuestra constitución (294 días).[5]

No obstante, el Estado acudió al Tribunal de Apelaciones y este foro revocó la orden de excarcelación. Es por ello que el peticionario acude en búsqueda de nuestro auxilio.

Consecuente con mi postura en el reconocimiento pleno de la garantía en contra de la detención preventiva

---

[5]Íd., págs. 77-78.

excesiva, su razón de ser, su envergadura e implicaciones, me resulta obvio que procedía el habeas corpus concedido por el Tribunal de Primera Instancia a favor del aquí peticionario y revocado por el Tribunal de Apelaciones.

La Constitución de Puerto Rico prohíbe expresamente la detención preventiva más allá del término de seis (6) meses. Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. Tal protección tiene como norte evitar los abusos de autoridad y que se castigue excesivamente por un delito por el cual no se ha juzgado. Sánchez v. González, 78 DPR 849 (1995). Esto, particularmente, porque se entremezclan otros derechos constitucionales como lo son el derecho a la vida, a la libertad, al debido proceso de ley y, sobre todo, el derecho fundamental a la presunción de inocencia.

De la discusión del Diario de Sesiones de la Convención Constituyente de Puerto Rico se desprende que "[d]entro de los seis meses hay que celebrar el juicio. Si no se celebra el juicio dentro de los seis meses, el hombre va para la calle". Diario de Sesiones de la Convención Constituyente de Puerto Rico, 1595 (1961). Asimismo, surge que "[l]o que se quiere evitar con esta disposición es que un individuo esté preventivamente detenido por tiempo [i]limitado, como acontece muchas veces en los tribunales". Íd., pág. 1950.

La y los artífices de nuestra Constitución dispusieron el término de seis (6) meses como fecha límite para que una persona imputada de delito espere el inicio de su

juicio privado de su libertad. Si tal plazo no se cumple, procede un habeas corpus y con ello la excarcelación del acusado o de la acusada. ¿Por qué pensar que ello no aplicaría cuando el juicio ha sido suspendido sin miras de poder reanudarlo? Su efecto es el mismo: la persona está privada de su libertad recibiendo un castigo excesivo por un acto delictivo no probado. Peor aún, está en un limbo jurídico, sin remedio alguno, viendo como pasan los días, semanas y meses privado de su libertad. Según he reiterado, "prisión es prisión". Pueblo v. Andújar, 2020 TSPR 46 (Estrella Martínez, voto particular); Arnaldo Ortiz v. Alcaide, 203 DPR 1033 (2020) (Estrella Martínez, expresión disidente). A su vez, advertí en mi disenso en Pueblo v. Díaz Alicea, 2020 TSPR 56 (Estrella Martínez, opinión disidente), que el inicio del juicio no desactiva la protección constitucional a la detención preventiva.

La fijación del término de seis (6) meses para el inicio del juicio tiene previsto que éste tendrá una continuidad cierta y final, no así que tal inicio sea paralizado indefinidamente y que la persona se quede en un limbo jurídico privado de su libertad irrazonablemente. En esta circunstancia, al momento del Tribunal de Primera Instancia conceder el habeas corpus aquí en controversia, existía un ambiente de **incertidumbre** tanto para el individuo privado de su libertad como para el Estado y el propio sistema judicial.

No debemos crear ficciones jurídicas para negar la realidad del encarcelamiento y perpetuar el mismo en personas que no han sido declaradas culpables de los delitos que se le imputan. Pueblo v. Díaz Alicea, supra; Pueblo v. Andújar, supra. Como muy bien señaló el foro primario, no podemos borrar los días que el peticionario estuvo privado de su libertad en una cárcel por el sólo hecho de que en algún momento comenzó el juicio en su contra, pero el mismo quedó subsumido en una paralización indefinida.

A su vez, es menester mencionar que el hecho de que la continuación del juicio esté programada no convierte la presente controversia en académica. Para empezar, al momento de concederse el habeas corpus aquí en controversia, el foro primario no tenía expectativa alguna de cuándo podría reanudarse este juicio. En aquel momento, la continuación del juicio era un asunto indefinido. Aunque posteriormente se fijó la continuación del juicio, no cambia el escenario de todos los días que el señor Salvá Rivera ha estado privado de su libertad de manera injusta e injustificada, lo que amerita su excarcelación.

En segundo término, los esfuerzos de buena fe del foro primario para continuar el juicio resultaron infructuosos anteriormente. Ante ese cuadro, no tenemos garantías de que la continuación del proceso se materialice. En tercer término, aun si el juicio continuara en la fecha programada, opino que la protección

constitucional contra la detención preventiva excesiva se activó a favor del señor Salvá Rivera al haber transcurrido más de un (1) año desde que fue privado de su libertad. Ante esta realidad, el habeas corpus aquí en pugna permitiría que el peticionario enfrente la continuación de su juicio desde la libre comunidad, con las correspondientes condiciones, tal como lo enfrentan los que cuentan con medios económicos para pagar una fianza.

Desde el disenso respetuoso, veo como la línea jurisprudencial moderna sigue debilitando una protección constitucional autóctona de vanguardia que persigue erradicar el mal de detenciones preventivas prolongadas e irrazonables que se convierten en privaciones de libertad violatorias de los derechos humanos. Desde el disenso, recuerdo que "la Constitución de Puerto Rico le dicta la agenda al Estado sobre sus prioridades administrativas, tecnológicas y de política pública. No es a la inversa. Si así fuera, las garantías esenciales quedarían al capricho de los gobernantes y de los que ejercemos el poder". Pueblo v. Andújar, supra, (Estrella Martínez, voto particular). Por los fundamentos que anteceden, disiento respetuosamente.

Luis F. Estrella Martínez
Juez Asociado